IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) No. 4:25-CR-010  CMS |
| | ) |
| MARSHALL WILLIAMS | ) |
| | ) |
|     Defendant. | ) |

## <u>MARSHALL  WILLIAMS'S SENTENCING MEMORANDUM</u>

Marshall  Williams, through counsel, hereby requests a sentence of 228 months imprisonment, which constitutes a downward variance from the United States Sentencing Guidelines (USSG) range. In support, the defense states the following:

1.  **Sentencing Disparity:** The sentencing decision is based on an assessment of the individual case. *Gall v. United States,* <u>522 U.S. 38, 52</u> (2007). "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue. " *Id.*

    a.  The instant crime involves human failings and resultant harm of singular magnitude. There is no more serious offense.

1

b.  Yet, in comparable cases federal defendants usually receive sentences below the USSG range. *See* Exhibit A.

c.  For example, during fiscal years 2021 through 2025, 4 federal defendants received sentences under the same USSG section applicable to the crime involved in this case (§ 2G2.1), with the same Total Offense Level (39) and Criminal History Category ( VI ), resulting in a USSG range of 360 months to Life imprisonment. *See* Exhibit A. Of those defendants, the median length of imprisonment imposed was 240 months, and the average length of imprisonment imposed was 267 months. *Id.*

d.  Likewise, during fiscal years 2021 through 2025, 20 federal defendants received sentences under the same USSG section applicable to this case (§2G2.1), with the higher Total Offense Level contemplated in the disclosure PSR (43) and Criminal History Category (VI). *See* Exhibit B. Among those defendants,  the average length of imprisonment was 343 months and the median length of imprisonment was 360 months. *Id.* Consequently, even at the higher offense level contemplated in the disclosure psr, similarly situated defendants usually receive a downward variance. *Id.*

e.   These statistics expressly do <u>not</u> reflect a recommended sentence from the United States Sentencing Commission. *See* https://www.ussc.gov/guidelines/judiciary-sentencing-information.   However, they do provide guidance when deciding whether a downward variance will result in unwarranted disparity.

2

f. The defense anticipates the government will seek a sentence of 300 months, which constitutes a downward variance.

g. The defense respectfully avers that a lower sentence of 228 months will not result in unwarranted disparity. This lower sentence is appropriate due to the unique nature and circumstances of the offense, and the history and characteristics of the defendant.

2. **Mr. Williams's History & Characteristics:**

a. Mr. Williams was primarily raised by his mother because his father suffered from debilitating renal failure. psr paragraph 91. His family was poor, but they had enough money to make ends meet until Marshall's father died in 1996, when Marshall was 12 years old. *Id.*

b. Unable to cope with stress and grief, Marshall's mother became addicted to crack cocaine. *Id.* She stopped paying utility bills, and the family lost power and water service to the home. *Id.* She began using crack inside the home, and drug addicts began to stay there. *Id.* One of these people perpetrated the abuse against Mr. Williams that is described in more detail in paragraph 91 of the psr. Another addict introduced Mr. Williams to alcohol and marijuana, and Mr. Williams began to consume both daily. psr, paragraphs 91 and 101.

c. A few months later, Mr. Williams came home to find his family's belongings had been removed by the sheriff's department. The furniture, clothes, and dishes were scattered on the front lawn, and his mother and siblings were gone. At 12 years old, Mr. Williams had no home and no family.

3

d. For the next 4 years, Mr. Williams had no permanent housing. Instead, he stayed with neighborhood friends and in parks and in abandoned buildings. *Id.*

e. In 2000, at age 16, Mr. Williams moved in with a much older woman. *Id.* She introduced Mr. Williams to PCP, and Mr. Williams consumed the drug daily for the next 7 years. psr, paragraph 101. The woman became pregnant with Mr. Williams's child, and then she asked Mr. Williams to move out. Mr. Williams was homeless again.

f. He eventually moved to Jefferson City, Missouri where he lived with a friend. He remained a daily user of PCP and marijuana, and he continued to have frequent contact with law enforcement for stealing charges, drug charges, tampering charges, and domestic assault charges – the criminal history of an erratic drug addict who had no control over his life. He went to prison. He was assaulted there. He was stabbed. He was beaten up, and he generally continued down the path of someone who could not shake a deep addiction to the most hardcore and damaging controlled substances available.

g. This continued when he began a relationship with the aunt of the victim in the instant offense. The pair traded drugs, and Mr. Williams began to use methamphetamine.

h. In March of 2024, Mr. Williams – high on methamphetamine and an unknown substance he took in the form of several pills – committed the horrible instant offense.

    i. When confronted days later, he fled to Columbia, Missouri where he was arrested on April 17, 2024. He has remained incarcerated ever since, and he knows he will remain incarcerated for a long time.

    j. Now with the benefit of hindsight and sobriety, Mr. Williams is racked with deep remorse for his conduct in the instant offense. He urged defense counsel for a quick disposition, pled guilty, and he knows he is facing a substantial prison sentence.

3. **The Nature and Circumstances of the Offense:** There is no more serious offense. Mr. Williams recognizes this, and he has deep and sincere contrition for his heinous conduct. He pled guilty as soon as possible, and he did so despite facing no less than 15 years in prison. He is motivated for counseling, He is committed to engaging in treatment while in the bureau of prisons, and while on supervised release.

4. **Protection of the Public:**

    a. Paramount to the sentencing decision in this case is the responsibility to protect the public. The defense respectfully avers that a sentence of 228 months imprisonment, to be followed by lifetime federal supervised release is adequate to protect the public. The defendant has committed no prior sex offenses. He will engage in treatment while in the bureau of prisons and on supervised release.

    b. Risk assessment of people who have committed sex offenses is a vast and complex area of study, but reliable and replicated data prove that contemporary sex offender treatment correlates with a lower risk of sexual

recidivism. *See A Meta-Analysis of the Effectiveness of Treatment for Sexual Offenders: Risk, Need, and Responsivity,* Hanson, Bourgon, Helmus, et. al. (2009), *see also* Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking Planning Initiative, Chapter 5: Adult Sex Offender Recidivism, https://smart.ojp.gov. Mr. Williams is motivated for treatment. He will receive sex offender treatment while in the federal bureau of prisons, and this treatment will continue as a condition of his federal supervised release when he returns to the community. He is likely to remain on federal supervision for the rest of his life.

c. Once released, Mr. Williams will be required to register under the Sex Offender Registration Act (SORNA), codified in 34 U.S.C. § 20901, et. seq. Consequently, he will also be required to register for life if he remains in Missouri as planned, pursuant to RSMo. § 589.400 et. seq.

d. As part of federal supervision, Mr. Williams will also be subject to physiological testing, polygraphs, and monitoring to ensure the safety of the community.

e. Mr. Williams will also have access to mental health treatment and counseling in the federal bureau of prisons and while on supervised release.

f. The defense respectfully avers that these factors will help mitigate any risk of future offenses committed by Mr. Williams and ensure the safety of the community.

5. **Time Served (Not Counted in Sentence):** The median length of imprisonment for similarly situated defendants over the last five fiscal years is a sentence of 240 months. *See* Exhibit A. Mr. Williams respectfully avers that a sentence 12 months *below* this average sentence is appropriate.

6. Mr. Williams has been in federal custody for over a year, but this time will not be credited toward his federal sentence pursuant to 18 U.S.C. § 3585 because has been in primary state custody. He is currently serving a 4 year sentence in the Missouri Department of Corrections. The defense does *not* suggest that this is a scenario warranting a lower sentence under the narrow criteria set forth in USSG § 5G1.3. Instead, the defense avers that in consideration of the 18 U.S.C. § 3553(a) factors, a sentence of 228 months is sufficient, but not greater than necessary, to comply with the purposes of punishment outlined in §3553(a)(2).

WHEREFORE, Mr. Williams respectfully requests a sentence of 228 months imprisonment.

Respectfully submitted,

/s/Charles J. Banks
CHARLES J. BANKS, #60027MO
Assistant Federal Public Defender
1010 Market Street, Suite 200
St. Louis, Missouri 63101
Telephone: (314) 241-1255
Fax: (314) 421-3177
E-mail: Charles_Banks@fd.org

ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2026, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Jillian Anderson, Assistant United States Attorney.

/s/Charles J. Banks
CHARLES J. BANKS, #60027MO
Assistant Federal Public Defender